IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 1, 2023

## IN RE RAYLON S. ET AL.

**Appeal from the Chancery Court for Van Buren County**
**No. 1481        Larry B. Stanley, Jr., Chancellor**

### No. M2023-00573-COA-R3-PT

A mother and stepfather sued to terminate a father's parental rights based on the grounds of abandonment by failure to visit and abandonment by failure to support as well as the best interest of the children. The trial court found by clear and convincing evidence that both grounds for termination existed and that it was in the best interest of the children to terminate the father's parental rights. The father appealed.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Jeffrey Vires, Crossville, Tennessee, for the appellant, Dakota S.

Robert Wesley Newman, McMinnville, Tennessee, for the appellees, Cierston M. and Terry M., Jr.

## OPINION

Dakota S. ("Father") was married to Cierston M.  ("Mother"), and three children were born to them during the marriage: Raylon S., Rynn S., and Remy S. ("the children"). They divorced in 2019, and Mother has since remarried to Terry M. ("Stepfather"). On March 23, 2022, Mother and Stepfather filed a petition to terminate the parental rights of Father and for the adoption of the children by Stepfather. The trial court found that Father had abandoned the children by failing to visit and failing to support them and that termination of Father's parental rights was in the best interest of the children. Father appealed. Specific facts relating to each ground and best interest will be addressed below.

STANDARD OF REVIEW

A parent's right to the care, custody, and control of his or her child is fundamental. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996) (citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)). This right, however, is not absolute. *In re Angela E.*, 303 S.W.3d at 250. The Tennessee legislature has established "'those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B., IV.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005)).

Tennessee Code Annotated section 36-1-113 establishes the method and grounds for terminating parental rights. Initially, a petitioner seeking to terminate the parental rights of another must prove that at least one ground for termination exists. Tenn. Code Ann. § 36-1-113(c)(1); *In re Angela E.*, 303 S.W.3d at 251. Then, the petitioner must prove that terminating parental rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "In light of the interests and consequences at stake, parents are constitutionally entitled to fundamentally fair procedures[] in termination proceedings." *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016) (citing *Santosky v. Kramer*, 455 U.S. 745, 754 (1982)).

As our Supreme Court has stated:

> Among the constitutionally mandated fundamentally fair procedures[] is a heightened standard of proof—clear and convincing evidence. *Santosky*, 455 U.S. at 769, 102 S.Ct. 1388. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

*Id.* Thus, on appeal, we apply the following principles:

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*Id.* at 523-24.

## ANALYSIS

### I. Termination Grounds

The petition for termination and adoption alleged the ground of abandonment found in Tenn. Code Ann. § 36-1-113(g)(1), which references the definition set forth in Tenn. Code Ann. § 36-1-102. Tennessee Code Annotated section 36-1-102(1)(A) provides several definitions for abandonment. For purposes of this action, the petition alleged facts related to the definition of abandonment by failure to visit and failure to support, as set forth in Tenn. Code Ann. § 36-1-102(1)(A)(i):

For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.][1]

---

[1]Tennessee Code Annotated section 36-1-102(1)(A)(i) has since been amended by 2023 PUB. ACTS, ch. 373, §1, eff. July 1, 2023.

*Failure to Visit*

A parent abandons his or her child when he or she, "for a period of four (4) consecutive months, [fails] to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). "Token visitation" means visitation that, "under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child[.]" Tenn. Code Ann. § 36-1-102(1)(C). In this case, the relevant four-month period for determining whether Father abandoned the children by failing to visit them is December 23, 2021, through March 22, 2022.

Father visited the children on Christmas Eve in 2019. He was drunk and took actions that scared and endangered the children, such as throwing a chair through a glass door. He also pushed the children's grandmother to the ground, breaking several of her ribs. Father pled guilty to aggravated burglary, domestic assault, reckless endangerment, and DUI second offense. Consequently, he spent time in jail for his actions. Upon his release in June 2020, Father was the subject of a no contact order as part of his criminal judgment, preventing him from having contact with the children until he completed the recommendations of the children's counselors. Father testified that he attempted to complete the counselors' recommendations—such as completing a mental health evaluation, an alcohol and drug assessment, alcohol education classes, a victim impact panel, and attending therapy—so he could see his children. Nevertheless, Father failed to complete all of the recommendations and has had no contact with the children since December 24, 2019, except for at a funeral and sending Valentine cards in 2023.

Father blames the no contact order and the COVID pandemic for impeding his progress toward completing the counselors' recommendations. Thus, Father claims that his failure to visit during the four months immediately preceding the filing of the termination petition was not willful. Since July 1, 2018, lack of willfulness has been an affirmative defense, pursuant to Tennessee Rule of Civil Procedure 8.03, which the parent facing termination has the burden to prove. Tenn. Code Ann. § 36-1-102(1)(I); 2018 TENN. PUB. ACTS, ch. 875, § 2. We note that Father failed to plead willfulness as an affirmative defense in his answer to the petition. During trial, however, he stated without objection that the COVID pandemic "made everything a lot harder" and maintained that not having a driver's license for two years made getting to appointments difficult.

"When a parent's contact with a child is limited by court order, the parent may abandon the child through failure to visit if 'the parent has the ability to demonstrate a change in situation or behavior that would warrant reinstating visitation but fails to do so[.]'" *In re C.N.*, No. M2020-01021-COA-R3-PT, 2022 WL 94403, at *9 (Jan. 10, 2022) (quoting *In re Kiara C.*, No. E2013-02066-COA-R3-PT, 2014 WL 2993845, at *6 (Tenn. Ct. App. June 30, 2014)). The no contact order stated: "The defendant shall have no contact with the children until Defendant has completed recommendations set out by the children's

counselors at the Personal Health & Growth Center." Shelia Masters, a counselor at the Personal Growth Counseling Center[2] who treated Raylon, testified that her recommendation for Father was individual therapy to address anger and impulsiveness issues. Even though Father was released from jail in June 2020 and was told what he needed to do in August 2020, Ms. Masters did not see him again until April 28, 2022, and did not begin seeing him regularly until December 1, 2022. While Ms. Masters conceded that she told Father in August 2020 that getting in with a counselor could take months, he did not seek an appointment at that time and did not see her until April 28, 2022. Ms. Masters's appointment availability during the COVID pandemic did not change. During that period, the amount of time since he had visited his children was lengthening. Father could have shortened that time away from his children by entering therapy much sooner, but he did not. He argues that the no contact order and the COVID pandemic prevented him from initiating his therapy sooner, but the matter was within his control. He just put it off.

We agree with the trial court that the failure to visit ground was proven by clear and convincing evidence.

### *Failure to Support*

Abandonment by failure to support occurs when a parent, "for a period of four (4) consecutive months, [fails] to provide monetary support or . . . [fails] to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D). "Token support" is support that, "under the circumstances of the individual case, is insignificant given the parent's means[.]" Tenn. Code Ann. § 36-1-102(1)(B). Like the ground above, the relevant four-month time period for determining whether Father abandoned the children by failing to support them is December 23, 2021, through March 22, 2022.

Father has been under a duty to pay child support since Father and Mother divorced on April 22, 2019. Father testified that he had been employed since leaving jail. Despite having employment, Father made two payments in March 2021 and no more payments until after the termination petition was filed on March, 23, 2022. Thus, Father made no support payments during the relevant four-month period.

Father's brief admits that no payments were made during the four months preceding the filing of the petition and makes no argument in defense of his lack of payment.

We agree with the trial court that the failure to support ground was proven by clear and convincing evidence.

---

[2] The transcript references the Personal Growth Counseling Center, the Personal Growth Health and Growth Center, the Personal Health and Growth Center, and Personal Growth Counseling. From the context, we are confident the references are all to the same facility.

## II.  Best Interest

Father maintains that the termination of his parental rights was not shown by clear and convincing evidence to be in the best interest of the children. We disagree.

When examining the best interest of the children in the termination of parental rights context, we are directed by statute to consider the nonexclusive factors listed in Tenn. Code Ann. § 36-1-113(i)(1). The statute enumerates factors that the court "shall consider," *In re Angela E.*, 303 S.W.3d at 251, but a court is not required to find that each of the enumerated factors exists before concluding that it is in the best interest of the child to terminate a parent's rights. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The statute similarly does not call for a mechanical determination of each of the statute's factors, but rather the relevancy and weight of each factor will be unique to each case. *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005). Therefore, in certain circumstances, the consideration of one factor may be determinative. *Id.* (citing *In re Audrey S.*, 182 S.W.3d at 878). However, this does not relieve a court of its duty to consider each factor and, even in cases where one factor is outcome determinative, the court must consider all factors and relevant proof that a party offers. *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017). In the best interest analysis, the facts considered must be proven by "'a preponderance of the evidence, not by clear and convincing evidence.'" *Id.* at 681 (quoting *In re Kaliyah S.*, 455 S.W.3d 553, 555 (Tenn. 2015)). "'After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s].'" *Id.* (quoting *In re Kaliyah S.*, 455 S.W.3d at 555).

The trial testimony is rife with facts, events, and professional opinions reflecting on the best interest of these children. None reflect well on Father. The children are afraid of him, and seeing him or hearing from him causes them to have problems.  When Father sent them Valentine's Day cards in 2023, the children regressed.  Rynn began bedwetting and having nightmares. He checked the doors every night to make sure they were locked. Rynn is terrified of motorcycles because he thinks it might be his Father. Father almost hit Rynn while riding his motorcycle after drinking. Raylon pushed Rynn out of harm's way. The Christmas presents Father sent in 2022 distressed Raylon, and the Valentine's Day cards distressed her further. She did not sleep well. She also checked the doors and feared Father would appear at her ballgames. Raylon associates her Father's drinking with aggression and fear. When told this by Raylon's counselor, Father said that he was a grown man and he could drink if he wanted to. After receiving her Valentine's Day card, Remy became afraid that Father would come to the school and take her. These facts and incidents demonstrate that the children do not have a secure and healthy attachment to their father and that there is no reasonable expectation of one; the children are fearful of Father and the mere thought of Father or any sort of contact with Father, even by mail, exacerbates the children's experience of trauma. *See* Tenn. Code Ann. § 36-1-113 (i)(1)(D), (F). As we have already discussed, there has been no visitation or child support from Father. *See* Tenn.

Code Ann. § 36-1-113 (i)(1)(E), (S). Father is resistant to taking responsibility for his actions and was extremely slow in beginning therapy. *See* Tenn. Code Ann. § 36-1-113 (i)(1)(J),(K),(M), (Q). The counselors for both Raylon and Rynn indicated that contact with Father would be detrimental. Fortunately, the children have developed a strong parental relationship with Stepfather. *See* Tenn. Code Ann. § 36-1-113 (i)(1)(H).

The facts of this case show that, even four years after the parents' divorce, the children remain emotionally fragile and afraid of Father due to his actions. There is virtually no prospect of these children healing and living normal lives in proximity to Father. No statutory termination factors favor Father, and a multitude of them individually and collectively indicate that Father's parental rights should be terminated. We agree with the trial court that clear and convincing evidence supports the finding that it is in the best interest of the children to terminate Father's parental rights.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Dakota S., for which execution may issue if necessary.

_/s/ Andy D. Bennett_____
ANDY D. BENNETT, JUDGE